# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

IN RE APPLICATION OF STEPHEN
SHEFSKY FOR AN ORDER TO TAKE
DISCOVERY FOR USE IN FOREIGN
PROCEEDINGS UNDER 28 U.S.C. § 1782

Case No. 2:23-cv-00633-JCM-BNW

**ORDER**

Before the Court is Wynn's Motion to Quash, which also challenges the sufficiency of Petitioner Stephen Shefsky's application for foreign discovery under 28 U.S.C. § 1782. ECF No. 22. Shefsky opposed and moved to compel. ECF No. 27. Each party filed replies in support of their underlying motions. ECF Nos. 29 and 32. Because Shefsky has demonstrated that his contemplated Canadian litigation is more than merely speculative, that his application is not an attempt to circumvent Canadian discovery methods, and that the contents of the subpoena fall within the scope of Federal Rule of Civil Procedure 26, the Court finds, once again, that his application meets the requirements of § 1782. *See also* ECF No. 21.

The Court also finds, in its discretion, that much of Shefsky's subpoena contains requests that are relevant and proportional to Shefsky's case. However, under its independent duty to limit the extent or frequency of discovery, the Court narrows portions of Shefsky's subpoena. As such, Wynn's Motion to Quash is denied in part and granted in part, and Shefsky's Countermotion to Compel is also denied in part and granted in part.

## I.   BACKGROUND

Shefsky filed his application in March 2023, seeking discovery from Wynn related to its dealings with David Bunevacz. *See generally* ECF No. 1. Shefsky alleges that Bunevacz is a conman who defrauded investors—including Shefsky and his company James Bay—by running a Ponzi scheme under the guise of his company CB Holdings, which purported to produce and sell marijuana vape pens in the early days of U.S. and Canadian legalization. ECF No. 1-5 at 3–6. Prior to investing in CB Holdings, Shefsky met with Bunevacz on numerous occasions to tour dispensaries and meet with potential distributors. *Id.* at 4–6. On one such occasion, the pair

attended a cannabis convention at Wynn, where Bunevacz provided Shefsky with a complimentary room and other luxury services. *Id.* at 5–6. Shefsky also learned from convention attendees that Bunevacz and his stepdaughter, M.H. Bunevacz, frequented Wynn and received many perks due to their "High Roller" gambling status. *Id.* at 6.

Shefsky and James Bay eventually invested $4.6 million through loans made to CB Holdings and Bunevacz's other business ventures. *Id.* When the loans later defaulted, Shefsky initiated a lawsuit against Bunevacz in California and began uncovering his shady dealings by speaking with the LA County Sheriff's Department and parties to other lawsuits against Bunevacz. *Id.* But realizing that Bunevacz and his companies were likely judgment-proof, Shefsky withdrew his California lawsuit in 2021. *Id.* at 7. A year later, a civil SEC complaint and a criminal complaint were filed against Bunevacz, who ultimately pleaded guilty. *Id.* at 9. From these complaints, Shefsky gleaned that Bunevacz spent over $8 million at casinos and lost upwards of $4 million dollars gambling at Wynn during the same time that Shefsky issued the loans. *Id.* Shefsky now seeks to bring a Canadian lawsuit against Wynn because he maintains that Wynn should have known that it was receiving potentially fraudulent funds from Bunevacz. *Id.* at 9.

When Shefsky filed his application, he issued the subpoena against Wynn at the same time. ECF No. 2. Wynn then moved to intervene and quash the subpoena, to which Shefsky opposed and moved to compel. ECF Nos. 3, 4, and 13. The Court denied Shefsky's Motion to Compel and granted Wynn's Motion to Quash as the subpoena was prematurely served on Wynn because the Court had not granted Shefsky's application. ECF Nos. 19 and 20. The Court also denied Wynn's Motion to Intervene because it failed to cite authority for intervention, but it provided Wynn an additional opportunity to provide such authority. ECF No. 20. Wynn declined to do so, and the Court evaluated and granted Shefsky's application on an *ex parte* basis. ECF No. 21.

Now that the subpoena was properly issued, Wynn disputes the sufficiency of Shefsky's application and moves to quash the subpoena. ECF No. 22. Shefsky, in turn, challenges Wynn's

1   ability to "intervene" and moves to compel Wynn's compliance with the subpoena. ECF No. 27.

2   **II.   ANALYSIS**

3       **A.  Wynn's Ability to Intervene**

4       Shefsky argues against Wynn's ability to "intervene," *i.e.*, its ability to challenge the

5   sufficiency of Shefsky's application. ECF No. 27 at 6–8. He contends that because the Court

6   previously afforded Wynn an opportunity to intervene, and it chose not to do so, Wynn is now

7   limited to asserting objections under Rule 26 and moving to quash under Rule 45. *Id.* at 7.

8   According to Shefsky, Wynn has not provided the Court with sufficient reasons for the Court to

9   reconsider its grant of Shefsky's application. *Id.* at 7–8.

10       Wynn responds that due to Shefsky's error in issuing the original subpoena before his

11   application was granted, it was faced with an unprecedented situation to which—when presented

12   with the opportunity to intervene by the Court—it could not find supporting authority. ECF

13   No. 29 at 3. Wynn contends that it is procedurally proper to argue against the application's

14   sufficiency now in the underlying motion to quash, particularly in light of other cases within this

15   District in which the subpoenaed party did so *after* the grant of the application. *Id.* at 4.

16       Regardless of the unique procedural history of this case and the Court's prior invitation

17   for Wynn to intervene, applications under § 1782 are not immune from adversarial testing.

18   *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469, 473 (5th Cir. 2022). The Fifth

19   Circuit determined that a district court erred in holding that a subpoenaed party could not

20   challenge whether the subpoena was supported under § 1782 or the *Intel* factors, but instead

21   could solely challenge the subpoena under Rule 45. *Id.* at 472–73. In so finding, the Fifth Circuit

22   explained that other Circuits have adjudicated § 1782 issues "*after presentations by both*

23   *parties.*" *Id.* at 475 (emphasis added); *see also In re Schlich*, 893 F.3d 40, 50 (1st Cir. 2018); *In*

24   *re Accent Delight Int'l. Ltd.*, 869 F.3d 121, 136 (2d Cir. 2017); *Application of Consorcio*

25   *Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1267

26   (11th Cir. 2014).

27       Though Shefsky, in essence, argues that Wynn waived its opportunity for adversarial

28   3

testing, it is not clear that the Court's prior orders would have put Wynn on notice that failure to intervene prior to the Court's grant of the application would preclude it from arguing the merits of the application in the future. And, as Wynn points out, the Court in *Macquarie* allowed the subpoenaed party to challenge the sufficiency of the application *after* the application was granted. *In re Jud. Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*, No. 2:14-CV-00797-GMN, 2015 WL 3439103, at *2 (D. Nev. May 28, 2015) ("In light of the *ex parte* nature of the request, the Court expressly provided Respondent the ability to challenge the allowed discovery once it had been issued."). Essential in the Fifth Circuit's holding was the recognition that the burden of proof rests with the subpoenaed party on a motion to quash, whereas the applicant must carry the burden to obtain § 1782 discovery. *Banca Pueyo*, 55 F.4th at 475. Given the different burdens, in conjunction with all the factors discussed above, the Court will consider Wynn's arguments regarding the merits of Shefsky's application.

### B.  Sufficiency of Shefsky's Application

In evaluating an application under § 1782, the Court employs a two-step process: first, the Court determines whether the petitioner met the three statutory requirements; then, the Court considers whether the four discretionary factors should permit the petitioner's requested discovery. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004). Wynn contests one of the statutory requirements—for use in a foreign proceeding—and two of the discretionary *Intel* factors: (1) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions, and (2) whether the request is unduly intrusive or burdensome. ECF No. 22 at 7–20. The Court discusses each of the contested elements in turn and need not discuss the remaining factors. *See* ECF No. 21 (finding that Shefsky met the requirements of § 1782).

### 1.  *"For Use" in a Foreign Proceeding*

Wynn contests that Shefsky's requested discovery will be "for use" in a foreign proceeding because it contends that the steps Shefsky has taken do not provide sufficient objective indicia to show that a dispositive motion is within reasonable contemplation. ECF No. 22 at 7–12. According to Wynn, Shefsky waited more than two years to initiate the action

and has failed to take additional steps—such as hiring foreign counsel, developing an in-depth litigation strategy, sending a demand letter, or hiring experts—that would indicate his likeliness to initiate the Canadian proceedings "within a reasonable amount of time." *Id.* at 8–9. Wynn asserts that Shefsky's inaction demonstrates the speculative nature of his contemplated suit and shows that he needs the requested discovery to determine *whether* to bring the Canadian action, which places him squarely in line with other petitioners whose applications were rejected. *Id.* at 9–11.

Shefsky responds that he has been diligent in pursuing his action against Wynn (as he did not learn of their involvement with Bunevacz until February 2023) and that any period of delay is attributable to Wynn resisting Shefsky's discovery efforts. ECF No. 27 at 8–9. He argues that the extent of his actions places him in the camp of applicants who have shown sufficient objective indicia because he has: (1) expended substantial time and money pursuing the trail of investor funds; (2) laid out his legal theories, including causes of action; (3) identified factual allegations (from the IRS, FBI, DOJ, SEC, and his own investigation) that provide a concrete evidentiary basis for his legal theories; and (4) identified the court in which he will bring suit. *Id.* at 9. Shefsky asserts that although he could file his claim in Canada absent the requested discovery, he seeks the discovery to aid him in strengthening his pleadings because he is pursuing novel causes of action. ECF No. 34 at 14, 18–19. This distinguishes him, Shefsky contends, from applicants who *need* § 1782 discovery to determine whether they have a basis for filing a foreign claim because unlike those applicants, Shefsky is not starting from a blank slate—he knows that discovery on his claims exists because Wynn submitted it to the SEC. *Id.* at 20.

To meet the "for use" prong, a proceeding need not be "pending" or "imminent," but rather it is sufficient that a "dispositive ruling" is "within reasonable contemplation." *Intel*, 542 U.S. at 259. Courts have explained that "to demonstrate that an action is within reasonable contemplation, 'the applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being

contemplated.'" *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 100 (2d Cir. 2020) (quoting *Certain Funds, Accts., and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123 (2d Cir. 2015)). In other words, the foreign proceeding "cannot be merely speculative," and must be "more than just a twinkle in counsel's eye." *Id.*

There are not precise contours regarding what constitutes sufficient objective indicia to render a dispositive motion within reasonable contemplation. Instead, it is a highly fact-intensive undertaking. However, a significant through line exists among cases in which petitioners' applications have been denied: typically, these applicants *need* the § 1782 discovery to determine whether they have a cognizable claim or to determine whether they will bring suit in the first place. But this does not accomplish the aims of the statute, and "[c]ourts must guard against the specter that parties may use § 1782 to investigate whether litigation is possible before launching it." *In re Sargeant*, 278 F. Supp. 3d 814, 823 (S.D.N.Y. 2017).

Recognizing this tendency, the Second Circuit has denied applications in which petitioners had solely retained counsel and were discussing the *possibility* of initiating litigation. *KPMG*, 798 F.3d at 124. Chief among these cases is *Mangouras*, in which the Second Circuit rejected an application because it was apparent that the petitioner *needed* the § 1782 discovery to investigate *whether* witnesses gave false testimony (which was the entire basis for the contemplated foreign litigation) and *whether* to bring the foreign proceeding. 980 F.3d at 101. Not only did the applicant in *Mangouras* fail to provide a legal theory or concrete factual basis for his belief that the witnesses gave false testimony, but his counsel's representations at oral argument indicated that his claims were speculative at best. *Id.* Counsel submitted that the petitioner would proceed with the foreign suit *depending on what the evidence showed*, that the requested discovery would help determine *whether or not* the witnesses falsely testified, and that the discovery would reveal a *possible* jurisdiction for the case to proceed. *Id.* at 101–02. Ultimately, the applicant's position boiled down to *if* the discovery showed false testimony, *then* he would initiate a foreign suit—which the court deemed to be speculative and not within reasonable contemplation. *Id.*

1    The Second Circuit again elaborated that a foreign proceeding could not be within

2 reasonable contemplation where a *potential* party would *consider* suing depending on the

3 contents of the requested discovery. *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669,

4 677–78 (2d Cir. 2022). There, the petitioner failed to set forth parameters for any planned foreign

5 litigation and instead relied on a letter submitted by liquidators of a company that stated that they

6 had "no objection" to the petitioner's application. *Id.* at 677. But the court pointed out that no

7 "proceeding" would necessarily begin upon the petitioner's presentation of the discovery

8 materials to the liquidators simply because they had the *discretion* to file suit in a Cayman court.

9 *Id.* at 678. Thus, the court held that discovery is not "for use" in a foreign proceeding "*if it must*

10 *first be used to persuade*" a party to initiate said proceeding. *Id.* (emphasis added).

11    This decision is in line with other courts' holdings that rejected "speculative"

12 applications. Typically, the driving force behind a "speculative" finding is the *contingency* of the

13 foreign proceeding upon the receipt of discovery materials. *See, e.g.*, *In re Rendon*, 519 F. Supp.

14 3d 1151, 1157 (S.D. Fla. 2021). One court noted:

15    It stands to reason that Applicants *must rely on the discovery sought here to*
   *continue developing the theory of their case, which may or may not materialize as*
16   *their investigation is not yet complete*. As Magistrate Judge Becerra notes, "the
   point of the discovery [Applicants seek here] is not for use in a contemplated[ ]
17   proceeding, but rather, *it is to see if there is any merit to [Applicants'] theory*."
   Applicants still have not set forth any timeline for when they plan to commence
18   the contemplated actions—*perhaps because such a timeline cannot be developed*
   *given that Applicants need the evidence requested in their Application to*
19   *determine whether they have a cognizable claim, and if so, against whom*.

20

21 *Id.* (emphasis added) (internal citations omitted).

22    And in conjunction with examining a petitioner's *need* for the discovery to *determine*

23 whether to initiate an action, courts also consider the depth of the application's details. *Id.* In

24 cases where applications are bereft of crucial elements for initiating litigation—such as the legal

25 theory for bringing the action, the evidence, the supporting factual bases, the parties they intend

26 to name, or a timeframe as to when those actions would be commenced—the contemplated

27 foreign proceeding is more likely to *hinge* on the receipt of discovery materials and therefore be

28                                              7

"speculative." *See id.*; *Sargeant*, 278 F. Supp. 3d at 823 ("the [ ] Application is bereft of even the broadest contours. . . [t]he assertion that [Applicant] plans to use the evidence he seeks to assess whether to initiate. . . underscores the 'mere[ ] speculative[ness]' of the contemplated proceedings"). In such circumstances, a dispositive ruling is not within reasonable contemplation, so the discovery is not "for use" in a foreign proceeding. *Rendon*, 519 F. Supp. 3d at 1157.

Here, although Shefsky stated that he "required discovery" to "plead and prove" his claims against Wynn (ECF No. 1-5 at 8), the actions that he has taken, the substance that he has provided in his applications, and his counsel's representations demonstrate that his Canadian proceeding is not merely speculative. Unlike the petitioner in *Mangouras*, Shefsky does not need discovery to determine whether the sole underlying purpose of his claims (*i.e.*, the false testimony in *Mangouras*) actually occurred. In his declaration, Shefsky detailed his business dealings with Bunevacz, how he came to learn of his fraud, and how he learned of Bunevacz's involvement with Wynn, along with their receipt of millions of dollars from him. ECF No. 1-5 at 6–9. He ascertained the factual bases supporting his claims through filing a case against Bunevacz in California, reporting Bunevacz to the LA Sheriff's Department, consulting with counsel in other cases involving Bunevacz, reviewing the criminal complaint against Bunevacz and his guilty plea, examining the SEC complaint, and learning of Wynn's involvement through an unsealed affidavit. *Id.*; ECF No. 27 at 9. Once he learned of Wynn's involvement with and receipt of funds from Bunevacz, Shefsky compared the facts and timeline set forth in the SEC complaint to infer that Bunevacz likely spent fraudulently obtained investor funds at Wynn. ECF No. 27 at 9–10. From this, he formed his legal theory that Wynn had an obligation to guard against Bunevacz using illegally obtained money at its resort and casino (or at the very least, it should have reasonably known that he was doing so). *Id.*

Shefsky's application also set forth his legal theories and identified the specific court he will bring suit in along with the causes of action he will raise against Wynn. ECF No. 1-5 at 8–9. At the hearing, Shefsky's counsel represented that Shefsky has hired Canadian counsel and that

8

due to statute of limitation restrictions, Shefsky will likely be required to bring his Canadian suit prior to February 2025.[1] ECF No. 34 at 15–17. Although it is true that Shefsky has not hired experts or sent Wynn a demand letter from Canadian counsel, Shefsky knows who he will sue, where he will sue, when he will sue, and that certain facts in his underlying claims did indeed take place (*i.e.*, Wynn's receipt of Bunevacz's money). ECF No. 34 at 10, 15–17. This distinguishes him from petitioners like those in *Rendon* or *Sargeant*—where one applicant could not set forth a timeline nor the subject of the litigation and the other's claims were described by the court as "embryonic"—and places him among those whose applications were granted. *See, e.g.*, *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 249 (S.D.N.Y. 2018) (finding that accusations that foreign proceeding was a "mere bluff" were unfounded given counsel's representations at hearing that petitioner had foreign counsel and would file before the end of the year). And although Wynn contends that Shefsky's two-year "delay" shows that he will not bring the Canadian suit within a "reasonable amount of time," Shefsky did not confirm Wynn's receipt of Bunevacz's funds until February 2023 and submitted his application soon after in March 2023. *See* ECF No. 1. Nonetheless, timing is not necessarily dispositive when the concerns are mitigated by the sufficiency of actions taken by the applicant. *See Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.,* 613 F. App'x 319, 323 (5th Cir. 2015) (holding that seven-year delay did not preclude judicial assistance under § 1782); *Application of Furstenberg Fin. SAS v. Litai Assets LLC*, 877 F.3d 1031, 1035 (11th Cir. 2017) (court did not take issue with counsel's representation that petitioner would file 45 days *after* receiving discovery).

But most importantly, Shefsky's counsel's representations at the hearing, coupled with the information submitted in Shefsky's application, demonstrate that Shefsky is not merely seeking discovery to determine whether he can bring his claim in the first place. At the hearing, counsel submitted that Shefsky could bring his claims in Canada right now absent discovery, but that he seeks the requested discovery—which he knows exists because Wynn submitted it to the

---

[1] Of course, should counsel's representation at oral argument prove false, such misrepresentations could be sanctionable pursuant to Federal Rule of Civil Procedure 11.

9

SEC—to aid him in making his pleadings as strong as possible, given the complexity of his causes of action. ECF No. 34 at 10, 14–19. And as Shefsky acknowledged at the hearing, although it is not conventional in the United States (or Canada) to receive discovery pre-lawsuit, it is a distinction that Congress has allowed in devising the statute. *See Intel*, 542 U.S. at 259. The twin aims of the statute are broad: (1) to provide efficient assistance to participants in international litigation, and (2) to encourage foreign countries to provide similar assistance to courts in the United States. *Id.* at 252; *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1112 (9th Cir. 2015). Receiving the requested discovery will accomplish the first goal by providing assistance to both Shefsky and the Canadian court in ascertaining his claims and Shefsky has provided sufficient objective indicia to show that a dispositive ruling is within reasonable contemplation. The Court therefore affirms its prior finding that Shefsky has met the statutory requirements of § 1782. *See* ECF No. 21.

### 2.  Attempt to "Circumvent" Foreign Discovery

Now that the Court is satisfied that the statutory requirements have been met, it turns to the contested discretionary elements. Wynn contests the third and fourth discretionary *Intel* factors, which ask whether the application is an attempt to "circumvent" foreign discovery and whether the requested discovery is unduly intrusive and burdensome. The Court found in its *ex parte* review of Shefsky's petition that both factors weighed in favor of granting the application. ECF No. 21. The Court readdresses each, in turn, below.

Wynn argues that Shefsky is using § 1782 discovery to circumvent Ontario's limitations on evidence-gathering because he does not meet the narrow exception that would permit a Canadian litigant to get pre-litigation discovery in a Canadian case. ECF No. 22 at 15. Wynn acknowledges that because § 1782 does not require a foreign proceeding to be pending, there may be some circumstances in which pre-litigation discovery does not circumvent proof-gathering restrictions, but that would likely only be the case in civil law jurisdictions where plaintiffs are required to submit evidence along with their complaints. ECF No. 34 at 25–26. But, Wynn contends, because Shefsky would not be able to get his requested discovery at this point in

1  the case if he had instead filed suit directly in Canada, this discretionary factor weighs against

2  granting Shefsky's application. ECF No. 22 at 13–14.

3       In response, Shefsky argues that the relevant inquiry is whether the requested discovery

4  would *ever* be available, *i.e.*, whether the discovery is categorically prohibited, akin to a

5  privilege. ECF No. 27 at 12. According to Shefsky, because this type of discovery is permitted in

6  Canada, it is not "circumvention" simply because Canada does not have a mechanism to

7  facilitate pre-litigation discovery. *Id.* Instead, Shefsky contends, circumvention involves an

8  attempt to get around a prohibition by fraud or dishonest means. ECF No. 34 at 29–30. But,

9  Shefsky argues, Canadian courts take a hands-off approach to § 1782 discovery and instead later

10  evaluate the admissibility during the Canadian case. ECF No. 27 at 14. This, he contends,

11  demonstrates that discovery in this case would not be circumvention. *Id.*

12       Though the Court acknowledges that applicants seeking pre-litigation discovery in civil

13  law jurisdictions may be on more sound footing in terms of arguing against circumvention, the

14  Court has failed to find authority setting forth the narrow interpretation that *Intel*'s instruction

15  that a case need not be pending in a foreign tribunal *only* applies to circumstances in which a

16  plaintiff is required to submit evidence with their complaint. *See, e.g.*, *Application of Consorcio*

17  *Ecuatoriano de Telecomunicaciones*, 747 F.3d at 1271. Such an interpretation would preclude

18  pre-litigation discovery in common law jurisdictions even though the statutory requirements of

19  § 1782 can be satisfied *without* a pending foreign proceeding.

20       Courts have also cautioned against giving "undue weight to the mere absence in foreign

21  jurisdictions of proof-gathering mechanisms" because "'[p]roof-gathering restrictions' are best

22  understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials,

23  rather than as rules that fail to *facilitate* investigation of claims." *Fed. Republic of Nigeria v. VR*

24  *Advisory Servs., Ltd.*, 27 F.4th 136, 153 (2d Cir. 2022) (quoting *Mees v. Buiter*, 793 F.3d 291,

25  303 n.20 (2d Cir. 2015)) (emphasis in original). Thus, as Shefsky noted, courts tend to focus

26  more on whether the *type* of requested discovery would be categorically prohibited by the forum

27  rather than whether there are mechanisms available for obtaining said discovery at any given

28                                     11

1  stage of litigation. *See Fed. Republic of Nigeria*, 27 F.4th at 153.

2         Courts also may consider whether the "nature, attitude, and procedures of that jurisdiction"

3  indicate that it is receptive to assistance under § 1782, even if it does not provide for similar

4  discovery itself. *Mees*, 793 F.3d at 303 n.20 (citing *Brandi-Dohrn v. IKB Deutsche Industriebank

5  AG*, 673 F.3d 76, 80–81 (2d Cir. 2012)). And "[a] Canadian court generally will be reluctant to

6  prevent someone from gathering evidence extraterritorially, as its ultimate admissibility in a

7  Canadian proceeding will be determined by the Canadian courts." *Vitapharm Canada Ltd. v. F.

8  Hoffman-LaRoche Ltd.*, 2001 CanLII 28239 at ¶¶45, 50 (finding that "a [§ 1782] request made

9  through means lawful in the United States does not violate the rules and procedure of this court").

10 Thus, Canadian courts have espoused the view that § 1782 discovery does not "bypass" Canadian

11 legal procedures because "there is no presumption that any evidence gathered" will form part of

12 the record in the eventual Canadian case. *Catucci v. Valeant Pharmaceuticals International Inc.*,

13 2016 QCCS 3431 (CanLII) at ¶44. The Court therefore finds that this factor weighs in favor of

14 granting Shefsky's application, as his requested discovery will not "circumvent" Canadian law.

15              *3.  "Unduly Intrusive and Burdensome"*

16         Wynn also contends that discretionary factor four—whether the requested discovery is

17 unduly intrusive and burdensome—weighs against granting Shefsky's application. ECF No. 22

18 at 15–20. Wynn mainly contends that this prong is not met because it claims that Shefsky

19 misrepresented the scope of the subpoena as "transactions and communications between Wynn

20 and the Bunevaczes and. . . a 30(b)(6) deposition regarding the location, nature, and extent of

21 those documents" when in actuality, it was much broader in scope. *Id.* at 15. Shefsky maintains

22 that the scope of the subpoena is permissible under Rule 26 and that Wynn's "boilerplate"

23 objections do not change the Court's prior determination. ECF No. 27 at 14.

24         The Court looks to the Federal Rules of Civil Procedure to determine the proper scope of

25 §1782 discovery. *See, e.g.*, *In re Letters Rogatory from Tokyo Dist. Prosecutor's Off.*, 16 F.3d

26 1016, 1019 (9th Cir. 1994). Because the analysis of this factor and Wynn's Motion to Quash are

27 intertwined, the Court discusses the details of Shefsky's subpoena and whether it complies with

28                                         12

Rule 26(b)(1) in greater detail below. But in short, the Court finds that the discovery Shefsky seeks is permissible under 26(b)(1) because it is relevant to discerning whether Wynn received fraudulent funds from Shefsky, whether it knew or should have known that the funds it received were fraudulent, and whether Wynn had sufficient measures in place to identify such suspicious transactions. Though the Court acknowledges that Shefsky's subpoena requests more than just transactions between Bunevacz and Wynn, the remaining requests are tangential to the inquiry into Bunevacz and ultimately go towards the extent and nature of Bunevacz's, and his stepdaughter's, involvement with Wynn.

When the Court initially found that Shefsky met the fourth discretionary factor, it noted that if Wynn opposed the scope of the subpoena, the Court would make the appropriate determinations after considering the parties' arguments, which it does below. ECF No. 21 at n.2. But for purposes of § 1782, the Court once again finds that the requests fall under the scope of Rule 26(b)(1) and are not unduly intrusive and burdensome. The Court therefore is satisfied that neither of the two contested discretionary factors caution against permitting Shefsky's discovery under § 1782. "Congress gave the federal district courts broad discretion to determine whether, and to what extent, to honor a request for assistance under 28 U.S.C. § 1782." *Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002). Given all the factors discussed above, the Court finds, in its broad discretion, that Shefsky has satisfied the requirements of § 1782.

### C.  Motion to Quash and Countermotion to Compel

Along with challenging the sufficiency of Shefsky's application, Wynn moves to quash the subpoena under Federal Rule of Civil Procedure 45. ECF No. 22. Shefsky countermoves to compel Wynn's responses to his document requests and Wynn's participation in a 30(b)(6) deposition of the topics that he noticed in his subpoena. *See generally* ECF No. 27. Wynn opposes Shefsky's Countermotion to Compel on the same grounds that it articulated in challenging the sufficiency of Shefsky's application under the fourth discretionary factor, arguing that the requests and deposition topics are unduly intrusive and burdensome because

13

they are overbroad, and are not relevant and proportional to Shefsky's case. *See generally* ECF Nos. 22, 29.

Shefsky argues that Wynn has waived any objections to the subpoena because rather than lodging responses and objections to each individual request or topic, Wynn has broadly asserted that Shefsky's requests fall outside the scope of Rule 26(b)(1), and therefore, Shefsky's application should be denied. ECF No. 27 at 18. According to Shefsky, Wynn was required under Local Rule 26-6(b) to set forth the text of Shefsky's requests and Wynn's responses and in failing to do so, it cannot rely on its "boilerplate" overbreadth and undue burden objections. *Id.* at 14 n.11, 18.

Wynn responds that the underlying motion differs from a typical motion to quash in which a party's *ability* to make discovery requests is not being challenged. ECF No. 34 at 32–33. Wynn contends that because there is a threshold question as to whether Shefsky's subpoena is valid, Wynn's contentions go more broadly towards the fourth discretionary element rather than the itemized list of objections that would be set forth in standard litigation. *Id.* Because, Wynn argues, there is no complaint in this case, it is difficult to determine whether Shefsky's requests are relevant and proportional, and Wynn would be better equipped to respond on an itemized basis once the threshold issue of the application's validity is resolved. *Id.* at 35.

As discussed above, the Court has already found once before, and again on reconsideration, that Shefsky's application meets the requirements of § 1782. *See* ECF No. 21. The validity of the subpoena (and Shefsky's ability to propound discovery) therefore, is no longer at issue. Thus, the burden now shifts to Wynn, as the party contesting discovery, to show that Shefsky's requested discovery is not relevant and proportional. *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 309–10 (D. Nev. 2019) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). And while the Court acknowledges that it is difficult to ascertain Wynn's objections given the manner in which they were set forth, the Court nevertheless has an independent duty to limit discovery that is outside the scope permitted by Rule 26(b)(1). FED. R. CIV. P. 26(b)(2)(C)(iii); *Drive Time Auto., Inc. v. Marlon Deguzman*, No. 2:14-CV-782-RFB-

VCF, 2015 WL 316817, at *3 (D. Nev. Jan. 23, 2015) ("Under Rule 26(b)(2)(C), the court has an independent duty to 'limit the frequency or extent of discovery' 'on its own.'"). Thus, the Court discusses each category of requested discovery, in turn, below.

### 1. *Document Requests*

Wynn takes issue with Shefsky's Document Requests, as a whole, for several reasons. ECF No. 22 at 17–20. Wynn primarily contends that the requests are so vague that it "cannot make definitive responses" and that in being so vague, it is unduly burdensome for Wynn because it shifts the burden to Wynn to identify the details necessary to produce potentially responsive documents. ECF No. 22 at 17. Shefsky counters that Wynn did not establish undue burden because it failed to set forth specific costs or time parameters that would make complying with the Document Requests unduly burdensome. ECF No. 27 at 14–15. He contends that Wynn—having already produced documents to government entities for other investigations—is already familiar with custodians that would have responsive documents, and that Wynn is in a better position to know details such as Bunevacz's aliases. ECF No. 34 at 45–46. This, Shefsky argues, demonstrates that producing responsive documents would actually be far less burdensome than Wynn contends. ECF No. 27 at 16.

"[B]road discretion is vested in a trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Rule 26(g)(1) requires an attorney to certify that each response to a discovery request was written to the best of the attorney's "knowledge, information, and belief formed after a *reasonable* inquiry." (emphasis added). As the party resisting discovery, Wynn bears "the burden

15

of showing that the[ ] discovery requests are unduly burdensome or oppressive." *Kristensen v. Credit Payment Servs., Inc.*, Case No. 2:12-cv-0528-APG, 2014 WL 6675748, at *4 (D. Nev. Nov. 25, 2014) (internal citation omitted). The party objecting to discovery as vague or ambiguous also has the burden to show such vagueness or ambiguity. *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 655 (D. Kan. 2006). And in responding to discovery, the party should use common sense and attribute ordinary definitions to terms in discovery requests. *Advanced Visual Image Design, LLC v. Exist, Inc.*, 2015 WL 4934178, at *6 (C.D. Cal. Aug. 18, 2015); *King-Hardy v. Bloomfield Bd. of Educ.*, 2002 WL 32506294, at *5 (D. Conn. Dec. 8, 2002) (finding that the responding party must give discovery requests a reasonable construction, rather than straining to find ambiguity).

As the Court previously noted, it is difficult to ascertain Wynn's objections to particular requests, as their motion does not set forth itemized requests/topics, responses, or objections. Nonetheless, in determining whether the Court must limit the requested discovery, it looks to the reasons articulated in Wynn's Letter to Shefsky regarding the scope of the subpoena (ECF No. 22-4) as well as independently reviews the subpoena's contents. *See* FED. R. CIV. P. 26(b)(2)(C)(i)–(iii) (requiring the Court "on its own" to limit the frequency or extent of discovery); *Drive Time Auto, Inc.*, 2015 WL 316817, at *3 (same).

When the parties met and conferred prior to Wynn bringing its Motion to Quash, Shefsky withdrew Document Request Nos. 15, 21, and 25. ECF No. 27 at 16 n.14. Nevertheless, Wynn presently takes issue with Document Request Nos. 5–6 and 11–12 (ECF No. 22-4 at 3), which concern:

> 5. All Documents relating to Transactions between Wynn and any of the Borrowers.
>
> * * *
>
> 6. All Documents constituting communications (*i.e.*, emails, correspondence, and text messages) relating to Transactions between Wynn and any of the Borrowers.
>
> * * *
>
> 11. All Documents relating to D Bunevacz's use of aliases, false

16

names, false identities and/or alternative spellings of his name
in Transactions with Wynn.

\* \* \*

12. All Documents constituting communications (*i.e.*, emails,
correspondence, and text messages) relating to D Bunevacz's
use of aliases, false names, false identities and/or alternative
spellings of his name in Transactions with Wynn.

ECF No. 1-4 at 10–11.

According to Wynn, although the term "Borrowers" in Document Request Nos. 5–6 is

defined as certain business entities, the definition also includes the phrase "officers, directors,

employees, or agents," of which Wynn "has no basis to determine what individuals may fall

within [that] scope." ECF No. 22-4 at 3. Wynn similarly challenges Document Request Nos. 11–

12, claiming that it has no ability to search for documents involving such aliases without

knowing what they are. *Id.*

The Court agrees with Wynn that the vague terms in Document Request Nos. 5–6, 11–12,

and their corresponding definitions impermissibly shifts the burden to Wynn to determine the

search terms to use when looking for responsive documents. Though Shefsky contends that

Wynn is in a better position to know of Bunevacz's aliases, it is unclear to the Court how that

would be the case. Wynn represents that through the meet-and-confer process, it allowed

Shefsky an opportunity to identify particular individuals, entities, and names of interest, but he

declined. ECF No. 22 at 18. And although Shefsky contends that the requests are not

burdensome because some of Bunevacz's aliases are mentioned in publicly available lawsuits

(ECF No. 27 at 16 n.13), this only cuts against Shefsky's argument and demonstrates that *he* is

the party who should clarify and supply such names as he is already aware of them. As such, the

Court grants Wynn's Motion to Quash and denies Shefsky's Countermotion to Compel as to

Document Request Nos. 5–6 and 11–12. Shefsky has 7 days from the date of this Order to either

(1) narrow the requests by refining the language of the requests and their definitions with

specific names, or (2) withdraw the requests. Should Shefsky choose to refine these requests,

Wynn must serve Shefsky with responsive documents to the narrowed requests within 30 days of

17

being served with the new requests.

As for the remaining Document Requests, Wynn did not lodge specific objections in its letter nor its motion. Document Request Nos. 1–4, 7–10, and 13 involve:

1. All Documents relating to Transactions between Wynn and D Bunevacz.

* * *

2. All Documents constituting communications (*i.e.*, emails, correspondence, and text messages) relating to Transactions between Wynn and D Bunevacz.

* * *

3. All Documents relating to Transactions between Wynn and MH.

* * *

4. All Documents constituting communications (*i.e.*, emails correspondence, and text messages) relating to Transactions between Wynn and MH Bunevacz.

* * *

7. All Documents relating to D Bunevacz's Player Profile information.

* * *

8. All Documents constituting communications (*i.e.*, emails, correspondence, and text messages) relating to D Bunevacz's Player Profile Information.

* * *

9. All Documents relating to MH Bunevacz's Player Profile information.

* * *

10. All Documents constituting communications (*i.e.*, emails, correspondence, and text messages) relating to MH Bunevacz's Player Profile information.

* * *

13. All Documents constituting communications (*i.e.*, emails, correspondence, and text messages) between D Bunevacz and Wynn including but not limited to those relating to promotional programs and offers, complimentary services, loyalty programs, VIP programs and/or services and special events.

ECF No. 1-4 at 10–11.

Wynn does, however, take issue with Shefsky's request for "All Documents" or "All Communications" because it contends that such terms create an "unworkable and overbroad scope" that would need to be narrowed to be "plausibly achievable." ECF No. 22-4 at 4. But this argument ignores the fact that it is not the "all" modifiers that seek to narrow or particularize the scope of the request, but rather the language that follows. The Court is not sure how "all," in and of itself, could be modified to narrow the scope of the requests and direct Wynn to specific custodians and terms. For example, the vague modifier "some" would seem to have the opposite effect and would only further complicate Wynn's search in determining what is responsive. Omitting the word "all" altogether also does not seem to narrow the scope of the request. Instead, it is the phrases that follow "All Documents" that are descriptive.

"All-encompassing demands that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard" for document requests. *Mahalingam v. Wells Fargo Bank, N.A.*, No. 3:22-CV-1076-L, 2023 WL 3575645, at *7 (N.D. Tex. May 19, 2023). However, where the description of the requests is sufficiently tailored to allow a party to ascertain responsive documents, the use of the language "All Documents" is not overbroad. *See Johnson*, 238 F.R.D. at 658 (request for "all documents" for persons employed in "Sales Organization" was not overly broad where party had narrowly defined "Sales Organization"). Here, though Shefsky requests all documents and communications, he defines the terms "Documents" and "Communications" as well as terms in the phrases that follow, such as "Transactions," "Player Profile," and particular individuals for whom he is requesting documents. The Court finds that such descriptions and definitions are sufficiently particularized to allow Wynn to determine responsive documents, and that the "all" modifier does not broaden their scope.

The Court also finds, in its discretion, that Document Request Nos. 1–4, 7–10, and 13 are relevant because they narrowly seek information regarding transactions between Wynn and two individuals: Bunevacz and his stepdaughter. Such information is relevant to Shefsky's claim

19

because it would demonstrate the extent of Wynn's receipt of funds from Bunevacz and his stepdaughter and which types of transactions they were engaging in. The Court will, however, require Shefsky to place a temporal restriction on these requests because the requests, as they currently exist, may include irrelevant transactions and information. Shefsky must cabin the timeline to implicate documents related to the conduct alleged in his application and related briefing.

The Court therefore denies Wynn's Motion to Quash and grants Shefsky's Countermotion to Compel as to Document Request Nos. 1–4, 7–10, and 13. Shefsky must provide Wynn with a relevant time period for the requests within 7 days of the date of this Order. Wynn then must serve Shefsky with responsive documents within 30 days of receiving Shefsky's refined requests.

### 2. Deposition Topics

Wynn also contests Deposition Topic Nos. 3–14 because it contends that they seek testimony on information that is identical to Shefsky's document requests and Deposition Topic Nos. 15–17 because "there is simply no way" that these topics could be relevant or proportional. ECF No. 22 at 16. Overall, Wynn argues that the Deposition Topics are overbroad as well as unduly intrusive and burdensome, albeit with little explanation as to how. *See* ECF No. 22 at 15–16. As with the document requests, Shefsky claims that Wynn failed to meet its burden of showing that the topics are burdensome. ECF No. 27 at 18.

Deposition Topic Nos. 3–14 seek testimony related to:

> 3. Wynn's actions taken to ensure compliance with state and federal reporting obligations and the issuing of Suspicious Activity Reports by Casinos (SARC) with respect to gambling Transactions between D Bunevacz and Wynn.

> \* \* \*

> 4. Wynn's issuance of or response to information sharing requests under Title 31, Subpart E of the Code of Federal Regulations concerning D Bunevacz.

> \* \* \*

20

5.  The management of D Bunevacz's accounts at Wynn.

\* \* \*

6.  Wynn's monitoring, documenting, and processing of Transactions between Wynn and D Bunevacz.

\* \* \*

7.  Wynn's monitoring, documenting, and processing of Transactions between Wynn and D Bunevacz.

\* \* \*

8.  Wynn's monitoring, documenting, and processing of Transactions between Wynn and any of the Borrowers.

\* \* \*

9.  Wynn's monitoring, management, and decision making with respect to D Bunevacz's Player Profile information.

\* \* \*

10. Wynn's monitoring, management, and decision making with respect to MH Bunevacz's Player Profile information.

\* \* \*

11. Wynn's knowledge of D Bunevacz's use of aliases, false names, false identities, and/or alternative spellings of his name in Transactions with Wynn.

\* \* \*

12. Wynn's decision making with respect to its communications (*i.e.*, emails, correspondence, and text messages) with D Bunevacz, including but not limited to those relating to promotional programs and offers, complimentary services, loyalty programs, VIP programs and/or services and special events.

\* \* \*

13. Wynn's decision to undertake or to not undertake internal investigations to determine the source of funds expended by D Bunevacz in Transactions between D Bunevacz and Wynn.

\* \* \*

14. Wynn's decision making and any actions taken with respect to Transactions between D Bunevacz and Wynn exceeding US $10,000 (individually and/or in aggregate).

ECF No. 1-4 at 6–7.

According to Wynn, the Court should quash Shefsky's subpoena as to these Deposition

21

1   Topics because they are "cumulative" of his Document Requests. ECF No. 22 at 16. But Wynn

2   takes too narrow a view of a 30(b)(6) deposition. *Louisiana Pac. Corp. v. Money Mkt. 1*

3   *Institutional Inv. Dealer*, 285 F.R.D. 481, 486 (N.D. Cal. 2012). A 30(b)(6) designee's role is to

4   provide the entity's interpretation of events and documents. *Id.* (internal citation omitted). The

5   Federal Rules of Civil Procedure also do not permit a party served with a Rule 30(b)(6)

6   deposition notice or subpoena request "to elect to supply the answers in a written response to an

7   interrogatory." *Marker v. Union Fidelity Life Insurance*, 125 F.R.D. 121, 126 (M.D.N.C.1989).

8   "Because of its nature, the deposition process provides a means to obtain more complete

9   information and is, therefore, favored." *Id.* Similarly, in responding to a Rule 30(b)(6) notice or

10   subpoena, a corporation may not take the position that its documents state the company's

11   position. *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 172, 174 (D.D.C. 2003). "Corporations

12   are not entitled to declare themselves mere document-gatherers." *Wilson v. Lakner*, 228 F.R.D.

13   524, 530 (D. Md. 2005). "In order to meet the purpose of the Rule, if a corporation has

14   knowledge or a position as to a set of alleged facts or an area of inquiry, it is its officers,

15   employees, agents or others who must present the position, give reasons for the position, and,

16   more importantly, stand subject to cross-examination." *Beauperthuy v. 24 Hour Fitness USA,*

17   *Inc.*, 2009 WL 3809815 at *3 (N.D. Cal. Nov. 10, 2009) (internal citations omitted).

18       The Court has an obligation to prevent a party from using a 30(b)(6) deposition to subject

19   the opposing party to unreasonably burdensome or cumulative discovery. FED. R. CIV.

20   P. 26(b)(2)(C)(iii). But here there is no evidence that Shefsky is unnecessarily seeking to depose

21   Wynn, and the Court does not find that the deposition topics are unreasonably duplicative or

22   cumulative of the Document Requests. *See UniRAM Technology, Inc. v. Monolithic Sys. Tech.,*

23   *Inc.*, No. C 04–1268 VRW (MEJ), 2007 WL 915225, at *2 (N.D. Cal. Mar. 23, 2007) (noting

24   that the real question "is not whether topic 1 is duplicative of the June 2006 deposition, but

25   whether topic 1 is *unreasonably* duplicative"). The overlap between the requested documents

26   and the categories sought for deposition testimony does not warrant limiting Deposition Topic

27   Nos. 3–14. *Mitchell Eng'g v. City and Cnty. of San Francisco*, No. C 08–04022 SI, 2010 WL

28                                              22

455290, at *1 (N.D. Cal. Feb. 2, 2010) ("Even if the general topics to be addressed at the 30(b)(6) deposition will overlap to some extent, the questions asked and the answers given might not."); *Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 08–C–16, 2009 WL 2870622, at *2 (E.D. Wis. Sept. 2, 2009) ("Corporate designees are commonly produced, and no doubt some of their testimony may be a re-hash of what's been covered elsewhere, but their testimony is the testimony of the corporation itself, and for that reason alone it may not be duplicative.").

The Court will, however—consistent with its above Order—require Shefsky to narrow Deposition Topic No. 11 by providing Wynn with specific names or aliases. Should Shefsky choose not, or be unable, to supplement his request with names, he must withdraw the topic.

The Court was unable to discern particular challenges by Wynn to Deposition Topic Nos. 1–2. The Court nonetheless reviews the topics pursuant to its independent duty. *See* FED. R. CIV. P. 26(b)(2)(C)(iii). The topics seek testimony on:

1. The nature, extent, and location of the Documents requested in the Subpoena.

* * *

2. The search performed by Wynn for the Documents requested in the subpoena.

ECF No. 1-4 at 6.

As to these requests, the Court finds, in its discretion, that the topics are relevant because they relate to Wynn's effort to comply with the Document Requests that the Court has deemed relevant above. Thus, Wynn's Motion to Quash, insofar as Deposition Topic Nos. 1–10 and 12–14, is denied, and Shefsky's Countermotion to Compel is granted. However, with respect to Deposition Topic No. 11, the Court grants Wynn's request while allowing Shefsky an opportunity to supplement the topic. Shefsky must provide Wynn with specific names or aliases within 7 days of this Order or withdraw this topic. The Court discusses Deposition Topic Nos. 15–17 below.

23

### 3. *Suspicious Activity Report Privilege*

Wynn also contends that Shefsky seeks broad categories of information that is prohibited from disclosure under the Bank Secrecy Act and Anti-Money Laundering Act ("BSA/AML") as well as the Suspicious Activity Report ("SAR") privilege. ECF No. 22 at 19–20. But Shefsky argues that the SAR privilege is not a "blanket" privilege, and that Wynn must identify documents that it is withholding in a privilege log rather than simply stating that the entire category of documents is protected. ECF No. 27 at 19–20.

Wynn takes issue with Deposition Topic Nos. 3 and 15–17 (ECF No. 22-4 at 3), which seek testimony on:

> 3. Wynn's actions taken to ensure compliance with state and federal reporting obligations and the issuing of Suspicious Activity Reports by Casinos (SARC) with respect to gambling Transactions between D Bunevacz and Wynn.
>
> * * *
>
> 15. Wynn's corporate policy and protocols concerning suspicious Transactions.
>
> * * *
>
> 16. Wynn's corporate policy and protocols concerning notifications to state regulators, federal regulators, and law enforcement with respect to Transactions exceeding US $10,000 (individually and/or in aggregate).
>
> * * *
>
> 17. Wynn's corporate policy and protocols concerning information sharing requests under Title 31, Subpart E of the Code of Federal Regulations.

ECF No. 1-4 at 6–7.

Wynn opposes Topic No. 3 because it contends that it requires Wynn to disclose its BSA/AML policies and opposes Topic Nos. 15–17 because it claims that they do not relate to Bunevacz, but rather to Wynn's corporate policies and protocols regarding SARs. ECF No. 22-4 at 3.

24

In addition to the Deposition Topics, Wynn takes issue with Document Request Nos. 14, 16–20, and 22–24 (ECF No. 22-4 at 4), which seek:

> 14. All Documents constituting corporate policy and/or guidance concerning suspicious Transactions, including but not limited to handbooks, manuals, memoranda, and notices.
>
> * * *
>
> 16. All Documents relating to any internal investigations undertaken and information collected in order to determine the source of funds expended by D Bunevacz in Transactions between D Bunevacz and Wynn.
>
> * * *
>
> 17. All Documents constituting communications (*i.e.*, emails, correspondence, and text messages) relating to any internal investigations undertaken and information collected in order to determine the source of funds expended by D Bunevacz in Transactions between D Bunevacz and Wynn.
>
> * * *
>
> 18. All Documents relating to Transactions between D Bunevacz and Wynn exceeding US $10,000 (individually and/or in aggregate).
>
> * * *
>
> 19. All Documents constituting communications (*i.e.*, emails, correspondence, and text messages) relating to Transactions between D Bunevacz and Wynn exceeding US $10,000 (individually and/or in aggregate).
>
> * * *
>
> 20. All Documents containing corporate policy and/or guidance concerning notifications to state regulators, federal regulators, and law enforcement with respect to Transactions exceeding US $10,000 (individually and/or in aggregate), including but not limited to handbooks, manuals, memoranda, and notices.
>
> * * *
>
> 22. All Documents relating to any information sharing requests under Title 31, Subpart E of the Code of Federal Regulations made to or by Wynn concerning D Bunevacz.
>
> * * *
>
> 23. All Documents constituting communications (*i.e.*, emails, correspondence, and text messages) relating to any information sharing requests under Title 31, Subpart E of the Code of

> Federal Regulations made to or by Wynn concerning D
> Bunevacz.
>
> * * *
>
> 24. All Documents containing corporate policy and/or guidance
> including but not limited to handbooks, manuals, memoranda,
> and notices concerning information sharing requests under
> Title 31, Subpart E of the Code of Federal Regulations.

ECF No. 1-4 at 11–12.

Along with claiming that the documents are privileged, Wynn challenges the requests because it contends that they constitute a "general inquisition into Wynn's policies" that is not limited nor related to Bunevacz. ECF No. 22-4 at 3. According to Wynn, the documents requested from a "multiyear period with no connection Bunevacz" are not relevant nor proportional, and requiring Wynn to produce a privilege log for a category of documents that are non-discoverable would impose an undue burden. ECF No. 22 at 20.

The BSA requires financial institutions to establish various internal policies, procedures, and controls to combat money laundering, identity theft, embezzlement, and fraud. 31 U.S.C. § 5311 *et seq.* (2014). Regulations promulgated under the BSA prohibit banks from disclosing "a SAR, or any information that would reveal the existence of a SAR." 12 C.F.R. § 21.11(k)(1)(i). Other categories of documents, however, are not shielded, including "documents produced in the ordinary course of business" related to "banking activities, transactions, and accounts" that do not suggest the existence of a SAR. *In re JPMorgan Chase Bank, N.A.*, 799 F.3d 36, 40 (1st Cir. 2015) (internal citation omitted). Documents which constitute the "underlying facts, transactions, and documents upon which a SAR is based" are expressly declared exempt from the privilege. *Id.* at 43 (internal citations omitted). Thus, "the key query is whether any of those documents suggest, directly or indirectly, that a SAR was or was not filed." *Id.*

From the above-challenged documents, the Court discerns two prominent categories of requests: (1) those that seek documents regarding Wynn's policies and protocols (Deposition Topic Nos. 15–17, and Document Request Nos. 14, 20, and 24), and (2) those that seek documents regarding Wynn's interactions with Bunevacz (Deposition Topic No. 3 and

Document Request Nos. 16–19 and 22–23). *First*, though Wynn takes issue with Shefsky's requests for its policies and protocols—that it claims are unrelated to Bunevacz—such documents are not automatically non-discoverable under the SAR privilege. *JP Morgan Chase Bank*, 799 F.3d at 44 (declining bank's "invitation to view the 'privilege' as extending to any document that might speak to the investigative methods of financial institutions."). And the Court, in its discretion, finds the requests relevant to Shefsky's claims because the requested documents might demonstrate that Wynn did not implement sufficient safeguards to prevent fraudulent activity. On their face, it is not clear how such documents would reveal with effective certainty, either directly or indirectly, that Wynn did or did not file a SAR on Bunevacz or others.

*Second*, although the Court acknowledges that the next category of requests—those that directly relate to Bunevacz—*may* lead to the disclosure of the filing or non-filing of a SAR, courts have expressly rejected "[a] blanket protection over all documents related to any type of investigation." *Johnson v. Wells Fargo Bank Nat'l Ass'n*, 382 P.3d 914, 917 (Nev. 2016) (citing *JP Morgan Chase Bank*, 799 F.3d at 44). Instead, as Shefsky correctly points out, to the extent that Wynn believes that the SAR privilege applies, it must produce a log to Shefsky and submit the documents to the Court for *in camera* inspections. *Jasso v. Wells Fargo Bank, N.A.*, No. 220CV00858RFBBNW, 2021 WL 3549891, at *4 (D. Nev. Aug. 11, 2021), *rev'd in part on reconsideration*, No. 220CV00858RFBBNW, 2022 WL 20109334 (D. Nev. Jan. 31, 2022). In addition, the Court finds, under its discretion, that these requests are relevant to Shefsky's claims because the requested documents might show that Wynn knew, or should have known, that Bunevacz's funds were fraudulent or suspicious.

Therefore, as to Deposition Topic Nos. 3 and 15–17, and Document Request Nos. 14, 16–20, and 22–24, Wynn's Motion to Quash is denied and Shefsky's Countermotion to Compel is granted. Wynn must respond to the Document Requests within 30 days of this Order. To the extent that Wynn asserts the SAR privilege, it must produce a privilege log to Shefsky and

submit the documents to the Court for *in camera* review within 14 days of this Order. Should the parties see it necessary to enter into a protective order, they must do so within 30 days of this Order.

**III.  CONCLUSION**

**IT IS THEREFORE ORDERED** that Wynn's Motion to Quash (ECF No. 22) is GRANTED in part and DENIED in part consistent with this Order.

**IT IS FURTHER ORDERED** that Shefsky's Countermotion to Compel (ECF No. 27) is GRANTED in part and DENIED in part consistent with this Order.

**IT IS FURTHER ORDERED** that with respect to Document Request Nos. 5–6, 11–12, and Deposition Topic No. 11, Shefsky must supplement the requests with particular names within 7 days of this Order, or he must withdraw the requests.

**IT IS FURTHER ORDERED** that should Shefsky choose to refine Document Request Nos. 5–6, 11–12, and Deposition Topic No. 11, Wynn must serve Shefsky with responsive documents to the narrowed requests within 30 days of being served with the new requests.

**IT IS FURTHER ORDERED** that as to the remaining Document Requests, Shefsky must provide Wynn with a relevant time period within 7 days of this Order. Wynn then must serve Shefsky with responsive documents within 30 days of receiving Shefsky's refined requests.

**IT IS FURTHER ORDERED** that Shefsky's deposition of Wynn's 30(b)(6) witness must be scheduled within 20 days of this Order and be conducted no later than 45 days of this Order.

**IT IS FURTHER ORDERED** that to the extent that Wynn asserts the SAR privilege, it must produce a privilege log to Shefsky within 14 days of this Order.

**IT IS FURTHER ORDERED** that within 14 days of this Order, Wynn shall submit *in camera* any documents that it has withheld on the basis of the SAR privilege. Wynn is permitted to annotate the submitted documents with explanations regarding how the SAR privilege applies.

**IT IS FURTHER ORDERED** that should the parties see it necessary to enter into a protective order, they must do so within 30 days.

DATED this 20th day of May 2024.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE

29