# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

| | |
|---|---|
| IN RE APPLICATION OF STEPHEN SHEFSKY FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS UNDER 28 U.S.C. § 1782 | Case No. 2:23-cv-00633-JCM-BNW **ORDER** |

As part of its May 20, 2024 Order, the Court directed Wynn to provide certain documents to the Court for *in camera* review to determine whether Wynn had properly wielded the Suspicious Activity Report ("SAR") privilege. ECF No. 35. Stephen Shefsky sought documents related to transactions between Wynn and purported fraudster David Bunevacz, along with his stepdaughter M.H. Bunevacz. Wynn complied with the Order by serving Shefsky with a privilege log and submitting the corresponding documents to the Court. Because each of the documents would reveal the existence or nonexistence of a SAR, the Court will not compel Wynn to disclose the documents.

## I.    LEGAL STANDARD

Under the Bank Secrecy Act ("BSA"), the Secretary of the Treasury "may require any financial institution . . . to report any suspicious transaction relevant to a possible violation of law or regulation." 31 U.S.C. § 5318(g)(1).

The Financial Crimes Enforcement Network ("FinCEN") and the Office of the Comptroller of the Currency ("OCC") have each issued relevant regulations. FinCEN requires a SAR when a transaction involves at least $5,000 and the financial institution "knows, suspects, or has reason to suspect that . . . [t]he transaction involves funds derived from illegal activities or is intended or conducted in order to hide or disguise funds or assets derived from illegal activities." 31 C.F.R. § 1020.320(a)(2)(i). Similarly, the OCC requires a financial institution to file a SAR when it "detect[s] a known or suspected violation of Federal law or a suspicious transaction related to a money laundering activity or a violation of the [BSA]." 12 C.F.R. § 21.11(a). Financial institutions file their SARs with FinCEN. 31 C.F.R. § 1020.320(b)(2); 12

1  C.F.R. § 21.11(c).

2      If a financial institution makes a SAR, then it and its employees are prohibited from

3  "notify[ing] any person involved in the transaction that the transaction has been reported." 31

4  U.S.C. § 5318(g)(2)(A)(i). Regulations from FinCEN and the OCC also prohibit a financial

5  institution from disclosing a SAR along with any information that "would" reveal the existence

6  of a SAR. 31 C.F.R. § 1020.320(e)(1)(i); 12 C.F.R. § 21.11(k)(1)(i). Both FinCEN and the OCC

7  have issued interpretive guidance stating that the disclosure prohibitions extend to no-SAR

8  decisions as well. 75 FED. REG. 75593, 75595 (Dec. 3, 2010) ("An institution also should afford

9  confidentiality to any document stating that a SAR has not been filed."); 75 FED. REG. 75576,

10  75579 (Dec. 3, 2010) ("By extension, a national bank also must afford confidentiality to any

11  document stating that a SAR has not been filed."). The logic driving both of these interpretations

12  is that if a financial institution were able to disclose "information when a SAR is not filed,

13  institutions would implicitly reveal the existence of a SAR any time they were unable to produce

14  records because a SAR was filed." 75 FED. REG. 75593, 75595 (Dec. 3, 2010).

15      Stated plainly, then, "the key query is whether any ... documents suggest, directly or

16  indirectly, that a SAR was or was not filed." *In re JPMorgan Chase Bank, N.A.*, 799 F.3d 36, 43

17  (1st Cir. 2015) (citations omitted). When the OCC promulgated its final regulations, it

18  emphasized that "the strong public policy that underlies the SAR system as a whole . . . leans

19  heavily in favor of applying SAR confidentiality not only to a SAR itself, but also in appropriate

20  circumstances to material prepared by the national bank as part of its process to detect and report

21  suspicious activity, regardless of whether a SAR ultimately was filed or not." 75 FED. REG.

22  75576, 75579 (Dec. 3, 2010). To that end, some courts have held that "documents which have

23  been prepared as part of a national bank's process for complying with federal reporting

24  requirements are covered by the SAR privilege." *Lan Li v. Walsh*, No. CV 16-81871, 2020 WL

25  5887443, at *2 (S.D. Fla. Oct. 5, 2020) (citation omitted).

26      There are limitations to the scope of the SAR. The regulations provide that the disclosure

27  prohibition does not extend to "[t]he underlying facts, transactions, and documents upon which a

28                                      2

SAR is based." *See, e.g.*, 31 C.F.R. § 1020.320(e)(1)(ii)(A)(2); *Cotton v. PrivateBank and Trust Co.*, 235 F. Supp. 2d 809, 815 (N.D. Ill. 2002) ("Documents which give rise to suspicious conduct . . . are to be produced in the ordinary course of discovery because they are business records made in the ordinary course of business"). Plus, the use of the term "would" in the regulations has been construed to mean that "review of the document must" reveal "with effective certainty the existence of a SAR." *First Am. Title Ins. Co. v. Westbury Bank*, 2014 WL 4267450, at *2 (E.D. Wis. Aug. 29, 2014). "[I]nformation that, with aid of supposition or speculation, might tend to suggest to a knowledgeable reviewer whether a SAR was filed, is not privileged." *Id.* To the extent the SAR privilege applies, it "is unqualified and cannot be waived." *Id.*

## II.   ANALYSIS

Shefsky propounded document requests on Wynn, some of which Wynn contends implicate documents protected by the SAR privilege. *See* ECF Nos. 1-4, 22, 29. The Court ordered Wynn to serve Shefsky with a privilege log and to submit the withheld documents for *in camera* review. ECF No. 35. Wynn complied, producing 5 documents that span 41 pages. The Court will address each document in turn.

1. **Document 1:** The documents relate to transactions between Wynn and Bunevacz. Because producing them would disclose whether or not a SAR was filed, Wynn properly withheld these documents under the SAR privilege. 12 C.F.R. § 21.11(k). Wynn will not be compelled to produce documents labeled IN_CAMERA000001–IN_CAMERA000007.

2. **Document 2:** These documents are similar in nature to those found at Document 1. Because producing them would disclose whether or not a SAR was filed, Wynn properly withheld these documents under the SAR privilege. Wynn will not be compelled to produce documents labeled IN_CAMERA000008–IN_CAMERA000015.

3. **Document 3:** These documents are similar in nature to those found at Document 1. Because producing them would disclose whether or not a SAR was filed, Wynn properly withheld these documents under the SAR privilege. Wynn will not be compelled to produce documents labeled IN_CAMERA000016–IN_CAMERA000027.

4. **Document 4:** These documents are similar in nature to those found at Document 1. Because producing them would disclose whether or not a SAR

was filed, Wynn properly withheld these documents under the SAR privilege. Wynn will not be compelled to produce documents labeled IN_CAMERA000028–IN_CAMERA000035.

5. **Document 5:** These documents are similar in nature to those found at Document 1, though they also include emails by Wynn employees. Because producing them would disclose whether or not a SAR was filed, Wynn properly withheld these documents under the SAR privilege. Wynn will not be compelled to produce documents labeled IN_CAMERA000036–IN_CAMERA000041.

Because the Court finds that all 5 of the withheld documents are protected by the SAR privilege, it will not compel Wynn to produce them.

## III.   CONCLUSION

**IT IS THEREFORE ORDERED** that Wynn properly withheld documents labeled IN_CAMERA000001–IN_CAMERA000041 under the SAR privilege. Wynn will not be compelled to produce these documents.

DATED this 4th day of June 2024.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE

4